MATTER OF JOSEPH

In Deportation Proceedings

A-14840845

*Decided by Board November 29, 1968*

(1) While the special inquiry officer must exercise discretion to keep the hearing within bounds, the strict rules of evidence do not apply in an immigration proceeding and an applicant for relief under section 243(h), Immigration and Nationality Act, as amended, should be given reasonable opportunity in the presentation of evidence to be relied on by the Attorney General in formulating an opinion as to whether withholding of deportation is warranted.

(2) Where the testimony of respondent and his witness affirmatively established respondent was politically active as a leader of the opposition to the Duvalier regime from 1957 until his departure from Haiti in 1965; he was incarcerated on 3 occasions by the Duvalier regime and was beaten; his father-in-law was assassinated by supporters of Duvalier; and he has been an activist in opposition to Duvalier since his arrival in the United States, respondent has established a clear probability that should he return to Haiti he would be subject to persecution because of political opinion within the meaning of section 243(h) of the Act, as amended, administrative notice being taken that conditions in Haiti, as set forth in *United States ex rel Mercer v. Esperdy*, 234 F. Supp. (S.D. N.Y., 1964), have not improved to any extent since 1964.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer.

ON BEHALF OF RESPONDENT:
James J. Hines, Esquire
1250 Connecticut Ave., N.W.
Washington, D.C. 20036

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The respondent, a native and citizen of Haiti, appeals from an order entered by the special inquiry officer on September 5, 1968 granting him voluntary departure in lieu of deportation as an alien who after entry as a nonimmigrant visitor remained longer than permitted. An application for withholding deportation to Haiti pursuant to section 243(h) of the Immigration and Nation-

ality Act was denied. Exceptions have been taken to the denial of the application for withholding deportation.

The respondent, a married male alien, last entered the United States through the port of San Juan, Puerto Rico, on or about May 1, 1965. He was admitted as a nonimmigrant visitor for pleasure authorized to remain in the United States until June 15, 1965. He has remained in the United States subsequent to June 15, 1965 without authority and concedes that he is deportable as charged in the order to show cause.

The respondent applied for a withholding of his deportation pursuant to the provisions of section 243(h) of the Immigration and Nationality Act. The respondent maintains that he is regarded as a political opponent of the Duvalier Regime in Haiti and that he would be subject to persecution on account of his political opinion if he returns to his native country. The special inquiry officer concludes that the respondent has not met the burden of establishing by substantial evidence that he would be subject to persecution because of his race, religion or political opinion if he returns to Haiti.

The respondent testified that during the presidential campaign of 1957 he was active politically in behalf of Louis Dejoie, a candidate who ran in opposition to Duvalier. The respondent further testified that he was a member of the corps of guards organized by Dejoie; that during the campaign, he was arrested, beaten up and taken to jail for no reason (pp. 15 and 16). He was again arrested in 1958, held in prison for six months, and beaten on three occasions. He bears scars on his body as a result of the beatings (pp. 19-21). The respondent testified that after his release from prison in 1958, he joined the underground and on occasion went into hiding (p. 22). He was again arrested for security reasons in February of 1965. He testified that he was beaten while in prison; that upon his release from prison he went into hiding and that soon after his release he began making arrangements to go to the United States (pp. 28-29). He testified that his mother bribed the officers to obtain the necessary papers for entry into the United States (p. 31). He obtained a Haitian passport through a Haitian consul located in Miami, Florida (p. 31).

The respondent testified that after his arrival in the United States, he was active with a political group known as "Luc Somard" which had as its aim the subversion of the Duvalier Government (p. 32). The respondent also testified that he was

71

associated with the Moran group which had its own newspaper (p. 69).

A witness for the respondent, one Luc Savein, testified that he and the respondent were the campaign leaders for Dejoie; that he [the witness] was occupationally a salesman for Esso Standard Oil Company in Haiti and also published his own newspaper, "La Cloche"; that he [the witness] was arrested in the month of October 1966; that he was subsequently released; and that he then obtained a Haitian passport to enter the United States. The witness testified that the respondent would be apprehended at the airport and killed without any ceremonies if he returned to Haiti (p. 53).

The respondent testified that his brother-in-law is in exile in the United States and that his father-in-law, an attorney, was assassinated (pp. 63 and 64). The respondent further testified that after the assassination in 1964 or 1965, he went into hiding (pp. 64 and 65).

The testimony of the respondent and his witness makes it clear that they were active politically against the Duvalier Regime from 1957 up until the respondent's departure in June of 1965. The respondent has been incarcerated on three occasions by the Duvalier Regime and while in prison, he was beaten and there is evidence of scars on his body attesting to this fact. The court in *U.S. ex rel. Mercer* v. *Esperdy*, 234 F. Supp. 611 (S.D.N.Y., 1964), took judicial notice of the danger of persecution faced by political opponents of Duvalier. The court, on the basis of facts reported to the press concerning conditions in Haiti, stated that there was a "suppression of human rights and a total nonexistence of any rule of law"; that there has been a suspension of "all articles of the Constitution guaranteeing individual rights, among them being free speech, freedom from arrest and police brutality" (p. 617). It is a matter of common knowledge and this Board takes administrative notice that conditions in Haiti have not improved to any extent since 1964.

The policy restricting the favorable exercise of discretion to cases "of clear probability of persecution of the particular individual petitioner" has been sanctioned by the courts. *Lena* v. *Immigration and Naturalization Service*, 379 F.2d 536, 538 (7th Cir., June 7, 1967). The court in *Cheng Kai Fu* v. *Immigration and Naturalization Service*, 386 F.2d 750 (2d Cir., 1967), cert. denied 390 U.S. 1003, said that an alien must show that he would be singled out as an individual by the governmental authorities and suffer persecution therefrom in order to establish a clear

probability of persecution. We are of the opinion that the respondent has met this burden.

Counsel for the respondent during oral argument of the case before this Board referred to the conduct of the proceedings by the special inquiry officer. He questions whether the respondent had an adequate opportunity to develop that quantum of proof imposed[1] upon him as an alien who applied for relief under section 243(h) of the Act because the special inquiry officer on numerous occasions sustained the objections of the trial attorney to questions posed by the attorney who represented the respondent during the several hearings. Counsel is of the opinion that a reasonable latitude for interrogation should be allowed in a proceeding under section 243(h) of the Act.

We have carefully reviewed the record in light of the question raised by counsel. We note that the special inquiry officer sustained the objections of the trial attorney on more than 45 occasions in some 50 pages of the record (pp. 15-70). As an example, the witness for the respondent was questioned as to whether he engaged in any political activity with the respondent. The trial attorney objected and the special inquiry officer sustained, assigning no reason (p. 36). On other occasions when the respondent or his witness was questioned regarding violence during the political campaign in which they both participated, regarding the presence of physical marks on the body of the respondent and regarding whether anyone directly related to the respondent was persecuted by Duvalier, the special inquiry officer sustained the trial attorney's objections (pp. 38, 19 and 61). The special inquiry officer on some occasions stated that he was sustaining the trial attorney's objections because the particular question was either leading, irrelevant or without proper foundation. The special inquiry officer on one occasion during the hearing informed the respondent's counsel that he must "follow accepted procedures and formulate [his] questions in accordance with rules of evidence" (p. 49). The special inquiry officer on another occasion, after the trial attorney objected to a question as to whether the respondent had knowledge that his house was being watched by the Maquis, stated: "Sustained. Leading. Counsel have you any idea of the proper formation of a question?" (p. 66)

Although the special inquiry officer must exercise discretion to keep the hearing within bounds, we think in this case he was

---

[1] 8 CFR 242.17(c) provides, *inter alia*, that an alien who applies for relief under section 243(h) during a deportation proceeding "has the burden of satisfying the special inquiry officer that he would be subject to persecution on account of race, religion, or political opinion as claimed."

unduly restrictive. A deportable alien is eligible for relief under section 243 (h) only when in the "opinion" of the Attorney General his deportation would subject him to persecution because of his race, religion or political opinion in the country to which he has been ordered deported. The statute does not restrict or specify the considerations that may be relied upon by the Attorney General in formulating an "opinion." Under the circumstances, an alien should be given a reasonable opportunity to develop his case. The strict rules of evidence do not apply in an immigration proceeding. Furthermore, in light of the situation known to exist in Haiti, counsel in this case should have been accorded wider latitude in fully developing the evidence. The stakes are high and the Attorney General must rely primarily on the record in reaching an intelligent and fair "opinion" as to whether a withholding of deportation is warranted.

It has been our observation that documentary evidence is seldom available to establish the likelihood of persecution. In the usual situation, the only way an adequate record can be created in a section 243 (h) case is by questioning the alien and his witnesses. The important factor is not whether the question is leading, irrelevant, or without foundation, but rather whether the answer would assist the Attorney General in formulating his opinion. The special inquiry officer should weigh this objective along with his obligation to keep the record within bounds when ruling upon objections made by either counsel for the alien or the trial atttorney.

Although we find this record circumscribed, we conclude on the basis of the evidence before us that there exists a very real and present danger that the respondent would be persecuted because of his political opinion if he should return to Haiti. He has affirmatively established that he was politically active as a leader of the opposition to the government of Duvalier while residing in Haiti. His father-in-law, an attorney in Port-au-Prince, was assassinated by supporters of Duvalier. The respondent has been an activist in opposition to Duvalier since he arrived in the United States. We will withhold the respondent's deportation to Haiti pursuant to section 243 (h) of the Immigration and Nationality Act.

ORDER: It is directed that the appeal be and the same is hereby sustained.

It is further directed that the deportation of the respondent be withheld pursuant to the provisions of section 243 (h) of the Immigration and Nationality Act.