**Santiago ROSA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 7724.

United States Court of Appeals,
First Circuit.

April 14, 1971.

Samuel A. Bithoney, Boston, Mass., for petitioner.

Lawrence P. Cohen, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., and Willie J. Davis, Asst. U. S. Atty., were on the brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a petition to review a refusal of the Board of Immigration Appeals to reopen on the basis of newly discovered

evidence an order that petitioner, a citizen of the Dominican Republic who is here as a non-immigrant visitor, be deported. The original deportation order was affirmed by the Board in February 1968. Petitioner was entitled to appeal the decision to this court within six months, 8 U.S.C. § 1105a(a) (1), but did not. The right then expired, and was not revived by the proceedings on the motion to reopen. Gena v. INS, 5 Cir., 1970, 424 F.2d 227; Velasquez Espinosa v. INS, 9 Cir., 1968, 404 F.2d 544. While the validity of the Board's original decision is not before us on this appeal, a brief history of the prior proceedings will be helpful.

Petitioner claimed that he had been a Dominican police sergeant during the Trujillo regime, and that after the fall of the regime he was convicted of assassination for his conduct in that capacity by the new government, and was jailed, but was subsequently allowed to leave the country. He declared that he could not return because there were mobs beyond the control of the government, especially communist youth groups, who wished to kill him because of his role in the Trujillo government. On the basis of these claims he sought a determination that he would be subject to political persecution in the Dominican Republic and that therefore his deportation should be withheld under the Immigration and Nationality Act of 1952 § 243(h), 8 U.S.C. § 1253(h) (Supp. V, 1970).[1] The Board found his allegations insufficiently established. On the record then before the Board, this conclusion was well warranted.

Although petitioner did not appeal the Board's decision, he nevertheless succeeded in one way or another in delaying his departure until October 1969, when a warrant was issued for his deportation. He then sought to reopen his case on the ground of new evidence of eligibility for relief under subsection 1253(h). For "new" evidence he submitted his own affidavit which set forth the identical claims that had previously been found insufficient, and an affidavit of the Dominican Republic's local Consul General. This latter document stated that the affiant had been told by the chief Dominican representative in this country that the government could not restrain any mobs against petitioner, that if he returned his life would be endangered, and that "if he attempts [sic] to return to the Domenican [sic] Republic, he will be confined to jail, and his real and personal property will be confiscated and they could not grant him any safeguard against violence even though he was confined in jail." The Board denied relief, holding that any harm petitioner might suffer at the hands of civilian enemies because of his police activities ten years ago was not persecution within the meaning of subsection 1253(h). Alternatively, it found that petitioner had failed to meet his burden of establishing that he would in fact be subjected to the fate he described.

We ordered petitioner to brief the question whether subsection 1253(h) provides relief from the kind of persecution he alleges awaits him if he is deported. The response has not been illuminating. Petitioner furnished nothing but a statement of alleged issues which ignores the one we stated, and a citation to five cases, without comment. None of the cases deals with this issue.[2]

---

1. 8 U.S.C. § 1253(h) (Supp. V, 1970) reads as follows:

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reasons."

2. In particular, petitioner makes what he calls an equitable appeal on the ground that he is married to a citizen of the Dominican Republic who is a permanent resident of this country, and is now living with her and their two children. No issue of petitioner's right to resident status was raised in any of the proceedings leading to this appeal. The record shows that when petitioner applied for an immigrant

■ Subsection 1253(h) as originally enacted authorized the Attorney General to withhold deportation of an alien to any country in which he would be subject to "physical persecution." 66 Stat. 214. In 1965 the Committee on the Judiciary of the House of Representatives approved an amendment deleting the word "physical," largely, it appears, in response to what was regarded as the excessive narrowness of the provision. See Hearings on H.R. 7700 Before Subcomm. No. 1 of the House Committee on the Judiciary, 88th Cong., 2d Sess., pt. 3, at 860–61 (1964); 111 Cong.Rec. 21586 (1965). On the floor of the House a further amendment was offered to restrict the provision to persecution on account of race, religion or political opinion in order to provide some limits to its application. The floor amendment was adopted without discussion. 111 Cong. Rec. 20803–04 (1965). Nothing was said in connection with the enactment of either the original legislation or the amendments as to whether the persecution must be by the government in power, or may be by some other group. The Board, however, several years ago took a clear position on the issue in In re Tan, 1967, 12 I. & N. Dec. 564. Although relief was denied there on the ground that the petitioner had not proven he would be subject to persecution by civilians, the Board stated that the claim was a proper one.

"We do not dispute counsel's argument that the statute does not require proof of persecution by an organized government. * * * Mob action may be a ground for staying deportation under section 243(h) where it is established that a government cannot control the mob." 12 I. & N. Dec. at 568.

We agree with this statement, although the Board failed to mention it in the decision presently before us. Nothing in the ordinary definition of persecution suggests that the term applies only to the acts of formally established governments. In the absence of contrary authority, we see no basis for thinking that Congress intended that the availability of relief under subsection 1253(h) turn on legal niceties concerning who has de jure power if a strong minority has sufficient de facto political power to carry out its purposes without effective hindrance. *Cf.* D'Antonio v. Shaughnessy, S.D.N.Y., 1956, 139 F.Supp. 719.

■ However, like the Board's statement in *In re Tan*, our remarks on this subject must be dictum. We see no basis for faulting the Board's alternative holding that petitioner's evidence was insufficient to establish the facts on which he based his claim for relief. The burden was on petitioner to prove that there is a clear probability that he will be subjected to persecution if deported. 8 C.F.R. § 242.17(c); Cheng Kai Fu v. INS, 2 Cir., 1967, 386 F.2d 750, 753, cert. denied 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104; Lena v. INS, 7 Cir., 1967, 379 F.2d 536, 538. He has had an extensive, we might say too extensive, opportunity to make out his case. He has never offered anything more than his own assertions, and the Consul General's affidavit, much of which is hearsay, or unsubstantiated conclusions. The Board was warranted in concluding that so serious a charge, if true, should be far better documented. We have neither the power nor the disposition to reverse its decision.

Affirmed.

visa he was informally advised that he was ineligible to receive one. We also note that there has never been any claim that petitioner's wife could not safely return to the Dominican Republic. In fact, it appears that petitioner has property there, and that she has visited it on a number of occasions. This appeal is misplaced.